IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

AMAZON WEB SERVICES, INC.
and
VADATA, INC.,

    Plaintiffs,

v.                                               Civil Action No. 3:16cv619

GLOBAL EQUITY MANAGEMENT, S.A.,

    Defendant.

## MEMORANDUM OPINION

This matter comes before the Court on five motions: (1) Defendant Global Equity Management, S.A.'s ("GEMSA") "Rule 12(b)(5)[1] Motion to Quash Insufficient Service of Process" (the "Motion to Quash"), (ECF No. 18); (2) GEMSA's "Rule 12(b)(2)[2] Motion to Dismiss for Lack of Personal Jurisdiction" (the "Motion to Dismiss"), (ECF No. 20); (3) Plaintiffs Amazon Web Services, Inc. and VADATA, Inc.'s (collectively, the "Amazon Plaintiffs") "Motion to Enjoin [GEMSA] From Litigating More Than 30 Collateral Identical Customer Suits in the Eastern District of Texas" (the "Motion to Enjoin"), (ECF No. 25); (4) GEMSA's "Motion to Strike or Stay [the Amazon Plaintiffs'] Motion to Enjoin" (the "Motion to Strike"), (ECF No. 27); and, (5) GEMSA's "Opposed Motion to Withdraw as Counsel" (the "Motion to Withdraw"), (ECF No. 35).

---

[1] Federal Rule of Civil Procedure 12(b)(5) allows dismissal for "insufficient service of process." Fed. R. Civ. P. 12(b)(5).

[2] Federal Rule of Civil Procedure 12(b)(2) allows dismissal for "lack of personal jurisdiction." Fed. R. Civ. P. 12(b)(2).

The matters are ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. For the reasons that follow, the Court will: (1) deny the Motion to Quash and the Motion to Dismiss; (2) deny the Motion to Enjoin and the Motion to Strike as moot; and, (3) grant the Motion to Withdraw subject to the conditions stated in this Memorandum Opinion.[3]

## I. Procedural and Factual Background

The Amazon Plaintiffs bring this case seeking a declaratory judgment of non-infringement and invalidity of two patents purportedly assigned to and owned by GEMSA: United States Patent Numbers 6,690,400 (the "'400 patent") and 7,356,677 (the "'677 patent") (collectively, the "GEMSA Patents").

In light of GEMSA's status as a patentee not residing in the United States, and pursuant to 35 U.S.C. § 293,[4] the Amazon Plaintiffs requested permission to serve GEMSA by alternative means. (ECF No. 10.) The Court granted that request on the following basis:

> According to records filed with the Patent and Trademark Office, GEMSA is an Australian corporation with a principal place of business at 458 Morphett Road, Warradale, South Australia 5046. (Mem. Supp. Mot. Ex. A, Patent Assignment Abstract of Title for the '400 Patent at 1, ECF No. 11-3; Mem. Supp. Mot. Ex. B, Patent Assignment Abstract of Title for the '677 Patent at 1, ECF No. 11-4.) Additionally, the Amazon Plaintiffs indicate that the file wrappers for the GEMSA Patents do not reflect that GEMSA has designated with the Patent and

---

[3] The Court will also grant GEMSA's "Motion to Withdraw [GEMSA's] Opposed Motion to Withdraw as Counsel," (ECF No. 34), and deny as moot the June 16, 2017 "Opposed Motion to Withdraw as Counsel," (ECF No. 33).

[4] Under § 293, "[e]very patentee not residing in the United States may file in the Patent and Trademark Office a written designation stating the name and address of a person residing within the United States on whom may be served process or notice of proceedings affecting the patent or rights thereunder." 35 U.S.C. § 293. If no person on whom process may be served has been designated in the Patent and Trademark Office, "the United States District Court for the Eastern District of Virginia shall have jurisdiction and summons shall be served by publication or otherwise as the court directs." *Id.*

> Trademark Office a person on whom process may be served. (*See* Pls.' Mem. Supp. Mot. 2–3, ECF No. 11.)

(Mem. O. 2, ECF No. 16.) The Court allowed the Amazon Plaintiffs to serve process by two means: (1) "[p]ublication in a newspaper of general circulation, such as *The New York Times* or *The Washington Post*"; and, (2) "[p]ersonal service on GEMSA's United States Patent and Trademark correspondence address: William P. Ramey III of the law firms of Ramey & Browning, PLLC and/or Ramey & Schwaller, LLP, 5020 Montrose Boulevard, Suite 750, Houston, Texas 77006." (*Id.*) One week after the Court's order, the Amazon Plaintiffs filed proof of service by attaching a summons served on Mr. Ramey, (ECF No. 17), and a copy of *The Washington Post*'s classified section dated Thursday, August 18, 2016, (ECF No. 17-1).

GEMSA then filed two motions simultaneously: the Motion to Quash and the Motion to Dismiss. The Motion to Quash seeks to quash the attempted service of process on GEMSA because it failed to "comply with Due Process requirements." (Mot. Quash 1.) The Motion to Dismiss seeks to dismiss the case against GEMSA because "GEMSA did not initiate the patent application process in [the Eastern District of Virginia], has no relevant contacts to [the Eastern District of Virginia,] and has already subjected itself to personal jurisdiction in [the United States District Court for the Eastern District of Texas]." (Mem. Supp. Mot. Dismiss 2, ECF No. 21.) The Amazon Plaintiffs responded to both motions in one response, (ECF No. 24), and GEMSA did not reply. The time to reply has expired.

Before the Court ruled on the Motion to Quash and the Motion to Dismiss, the Amazon Plaintiffs filed the Motion to Enjoin, and GEMSA responded via the Motion to Strike. The Motion to Enjoin, which is now moot, sought a ruling from this Court enjoining GEMSA from litigating more than 30 collateral suits in the United States District Court for the Eastern District of Texas. GEMSA sought to strike the Motion to Enjoin pending resolution of the Motion to

3

Quash and the Motion to Dismiss. Before the Court ruled on the Motion to Enjoin and the Motion to Strike, the United States District Court for the Eastern District of Texas transferred GEMSA's claims against the Amazon Plaintiffs to this Court. (*See Global Equity Management, S.A. v. Amazon Web Services, Inc., et al.*, 3:17cv81.)[5] Accordingly, the Court will deny both the Motion to Enjoin and the Motion to Strike as moot.

GEMSA then filed the Motion to Withdraw, "reqest[ing] that William P. Ramey, III, Martin Conn and Matthias Kaseorg, and the law firms of Ramey & Schwaller, LLP and Moran Reeves & Conn PC, be permitted to withdraw as counsel of record for GEMSA." (Mot. Withdraw 1.) The Amazon Plaintiffs oppose the Motion to Withdraw "[o]ut of an abundance of caution . . . because it is uncertain whether by granting [the Motion to Withdraw], the Court may divest itself of jurisdiction over former counsel with respect to ordering sanctions for pre-withdrawal misconduct." (Opp'n Mot. Withdraw 2, ECF No. 36.) GEMSA filed a reply, refuting the Amazon Plaintiffs' argument and stating that the Court could permit withdrawal while ordering GEMSA to hire substitute counsel. The Court addresses these pending motions, seriatim, below.

## II. Analysis: Motion to Quash

GEMSA's Motion to Quash advances one argument: that, by serving process in the manner approved by this Court and under 35 U.S.C. § 293, the Amazon Plaintiffs failed to comply with the due process requirements of the Fifth Amendment to the United States Constitution.[6] Specifically, GEMSA argues that, by attempting service by publication in a

---

[5] GEMSA's counsel similarly filed a motion seeking to withdraw their appearances in that transferred case, which is also pending before this court. The Court will address that motion by a separate order in that case.

[6] "No person shall be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V.

4

newspaper of general circulation and by serving GEMSA's outside counsel, the Amazon Plaintiffs served process in the manner most convenient to them, while neglecting to serve process in the manner most likely to reach GEMSA. Although GEMSA essentially concedes that the Amazon Plaintiffs complied with 35 U.S.C. § 293,[7] GEMSA argues that doing so fails to satisfy due process. In essence, GEMSA challenges the constitutionality of the effectuated service. GEMSA's argument fails.

### A. Federal Rule of Civil Procedure 12(b)(5) in Patent Cases

Federal Rule of Civil Procedure 12(b)(5)[8] permits a defendant to challenge the method of service attempted by the plaintiff.[9] In patent infringement cases, federal law provides for two methods of service. *See Nutrition Physiology Corp. v. Enviros Ltd.*, 87 F. Supp. 2d 648, 652 (N.D. Tex. 2000). First, the plaintiff may serve non-resident defendants who maintain a regular

---

[7] GEMSA does not appear to dispute that the Amazon Plaintiffs complied with 35 U.S.C. § 293. (Mem. Supp. Mot. Quash 3 ("While that service arguably may have complied with 35 U.S.C. § 293, it did not comply with Due Process's requirement that the most likely method of reaching the defendant . . . was used for service.").)

[8] GEMSA asks that the Court *quash* the Amazon Plaintiffs' allegedly insufficient service of process. Unlike most Rule 12 defenses, Rule 12(b)(5) allows defendants to seek two courses of action: dismissal and quashing of process. "[T]he difference between the two results is not substantial." 5C Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1354 (3d ed.). First, "[i]n the case of a dismissal, the plaintiff merely reinstitutes the action and has process served again, making sure that the earlier defect in the summons or the mode of service has been corrected." *Id.* On the other hand, "[w]hen process is quashed, only the service need be repeated." *Id.*

[9] The Court sees it appropriate to distinguish the Rule 12(b)(5) motion asserted by GEMSA from motions to dismiss brought under Federal Rule of Civil Procedure 12(b)(4). A Rule 12(b)(4) challenge concerns the *form of the process* rather than *the manner or method of service*. Thus, Rule 12(b)(4) motions challenge noncompliance with Federal Rule of Civil Procedure 4(b), while Rule 12(b)(5) motions—like GEMSA's argument here—challenge the mode of delivery or the lack of delivery of the summons and complaint.

and established place of business in accordance with 28 U.S.C. § 1694.[10] Second, the plaintiff may serve non-resident patentees in suits relating to that patent or the rights thereunder pursuant to 35 U.S.C. § 293. This case involves service under § 293.

### B. The Amazon Plaintiffs' Service Complied With 35 U.S.C. § 293 and this Court's Order

The Amazon Plaintiffs complied with 35 U.S.C. § 293 and this Court's order when serving GEMSA: (1) by publication; and, (2) through GEMSA's outside counsel. Section 293 provides that if an alien patentee does not designate, through a submission to the United States Patent and Trademark Office ("USPTO"), an agent for service of process, "the United States District Court for the Eastern District of Virginia shall have jurisdiction and *summons shall be served by publication or otherwise as the court directs.*" 35 U.S.C. §293 (emphasis added).

Here, GEMSA is a non-resident that has not designated a domestic agent for service of process through the USPTO. Thus, the Amazon Plaintiffs correctly looked to § 293 for guidance on how to serve process. In accordance with § 293, the Amazon Plaintiffs served GEMSA by publication; and, as ordered by this Court under the authority provided to it in § 293, the Amazon Plaintiffs served process on GEMSA's counsel. Accordingly, the Amazon Plaintiffs complied with § 293.

### C. The Amazon Plaintiffs' Service of Process Did Not Violate the Constitution

Because the Amazon Plaintiffs complied with § 293, GEMSA's argument turns on the constitutionality of the service of process. The Court finds the Amazon Plaintiffs' service of process fell well within constitutional bounds.

---

[10] "In a patent infringement action commenced in a district where the defendant is not a resident but has a regular and established place of business, service of process, summons or subpoena upon such defendant may be made upon his agent or agents conducting such business." 28 U.S.C. § 1694.

6

GEMSA tersely argues that due process requires "that the most likely method of reaching the defendant (*i.e.*, serving the defendant itself, rather than others close to the defendant) [be] used for service." (Mem. Supp. Mot. Quash 3, ECF No. 19.) GEMSA cites no authority in the context of § 293 in support of this argument. In fact, GEMSA omits any authority at all regarding the constitutionality of serving process under § 293, and the Court sees none.

Instead, GEMSA relies on *McDonald v. Mabee*, 243 U.S. 90, 92 (1917), for the premise that a plaintiff may use substitute service only if the plaintiff attempts service in the manner *most likely* to reach the defendant.[11] The standard articulated in that 1917 decision has been updated.

---

[11] GEMSA relies on *McDonald* for the following cherry-picked premise: "To dispense with personal service the substitute that is most likely to reach the defendant is the least that ought to be required if substantial justice is to be done." 243 U.S. at 92.

In *McDonald*, the plaintiff brought suit in Texas, where, prior to the lawsuit, the defendant had been domiciled. *Id.* at 91. The defendant eventually established his domicile in Missouri, and after his departure from Texas, the plaintiff only served him by publication in a newspaper once a week for four successive weeks. *Id.* While never explicitly stated, a reasonable reading of the opinion suggests that the plaintiff published service in a Texas newspaper. *Id.* The defendant, in turn, never appeared in the suit. *Id.* The Supreme Court of Texas held that such service satisfied Texas law and overruled the defendant's contention that the judgment denied him the constitutional right to due process of law. *Id.* The Supreme Court of the United States disagreed, explaining that "[t]here is no dispute that service by publication does not warrant a personal judgment against a nonresident." *Id.* at 92 (citing *Pennoyer v. Neff*, 95 U.S. 714 (1877)). Writing on the "precise facts" of the case, Justice Holmes expressed disquietude about whether publication sufficiently notified an itinerant defendant of the existence of the case:

> Some language of *Pennoyer v. Neff* would justify the extension of the same principle to absent parties, but we shall go no farther than the precise facts of this case require. When the former suit was begun, [the defendant], although technically domiciled in Texas, had left the state, intending to establish his home elsewhere. Perhaps in view of his technical position and the actual presence of his family in [Texas], a summons left at his last and usual place of abode would have been enough. But it appears to us that an advertisement in a local newspaper is not sufficient notice to bind a person who has left a state, intending not to return.

*Id.* Not only does this fact-bound determination not pertain here, but more recent Supreme Court case law that has clarified the contours of due process in the service-of-process context. *McDonald* does not control.

7

Subsequent Supreme Court case law explains that service satisfies due process when it provides "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *see also Snider Int'l Corp. v. Town of Forest Heights, Md.*, 739 F.3d 140, 146 (4th Cir. 2014) (citing *Mullane*, 339 U.S. at 314–15). Due process does not require actual notice, and notice will suffice if it is either: (1) "reasonably certain to inform those affected"; or, (2) "not substantially less likely to bring home notice than other of the feasible and customary substitutes." *Id.* at 315.

Here, the Amazon Plaintiffs' service provided notice reasonably certain to apprise GEMSA of the claims against it. Indeed, by publishing notice in *The Washington Post* and by serving process on GEMSA's outside counsel,[12] the Amazon Plaintiffs took action that was reasonably certain to (and which did) inform GEMSA of the case. Whether a different method— *i.e.*, service on GEMSA in Australia—would have been feasible does not diminish the constitutionality of the actions taken by the Amazon Plaintiffs. The Court will deny the Motion to Quash.

### III. Analysis: Motion to Dismiss

Relatedly, GEMSA's Motion to Dismiss challenges personal jurisdiction on due process grounds. In a two-page argument with few citations to authority, GEMSA argues that "this Court lacks personal jurisdiction over this lawsuit [because] GEMSA did not initiate the patent application process in this District, has no relevant contacts in this District[,] and has already

---

[12] GEMSA relies on *Davies v. Jobs & Adverts Online, Gmbh*, 94 F. Supp. 2d 719, 722 (E.D. Va. 2000), for the premise that serving one's attorney does not, by itself, constitute sufficient service of process. The Court need not address the applicability of *Davies* here because the Amazon Plaintiffs did not attempt to serve process by only serving GEMSA's counsel. Publication *and* service on GEMSA's counsel undergird the Court's finding that Amazon adequately served GEMSA.

subjected itself to personal jurisdiction in a different U.S. Court." (Mem. Supp. Mot. Dismiss 1, ECF No. 21.) GEMSA's Motion to Dismiss fails because GEMSA purposefully availed itself of the privileges of patent ownership through its contacts with the USPTO in the Eastern District of Virginia.

### A. The Court Could Find that GEMSA Waived Any Challenge to Personal Jurisdiction By Filing the Motion to Quash First and Separately

As a preliminary matter, because GEMSA filed the Motion to Quash first and, in a separate filing, its personal jurisdiction challenge, the Court—technically—could rule that GEMSA waived the latter arguments. *See* 5C Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1361 (3d ed.) ("According to Rule 12(g), once a party has chosen to make a Rule 12(b) motion, any available Rule 12(b) defenses must be joined in that motion or those that are omitted will be waived."). Federal Rule of Civil Procedure 12(g)(2) requires that a defendant make all challenges under Rule 12 in the same motion. *See* Fed. R. Civ. P. 12(g)(2) ("Except as provided in Rule 12(h)(2) or (3),[13] a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion."). Rule 12(h)(1)(A) states: "A party waives any defense listed in Rule 12(b)(2)-(5) by . . . omitting it from a motion in the circumstances described in Rule 12(g)(2)." Fed. R. Civ. P. 12(h)(1)(A).

But GEMSA filed both Rule 12 motions on the same day, meaning that GEMSA's failure to comply with Rule 12 did not create unnecessary delay at the pleading stage, which Rule 12(g)

---

[13] Rule 12(h)(2) permits, in limited circumstances, the filing of failure to state a claim upon which relief can be granted, to join a person required by Rule 19(b), or to state a legal defense to a claim may be raised. Rule 12(h)(3) allows a defendant to file a motion to dismiss for lack of subject-matter jurisdiction at any time.

9

aims to prevent.[14] Accordingly, although procedurally improper, the Court will not deny the Motion to Dismiss for failure to comply with Rule 12(g)(2).

### B. This Court Has Personal Jurisdiction Over GEMSA

Most importantly, GEMSA's Motion to Dismiss fails substantively. This Court has jurisdiction over GEMSA because GEMSA purposefully availed itself of the privileges of patent ownership through its contacts with the USPTO in the Eastern District of Virginia. Accordingly, the Court will deny the Motion to Dismiss.

#### 1. Personal Jurisdiction in Patent Cases

Federal Circuit law governs personal jurisdiction in patent cases because "the jurisdictional issue is 'intimately involved with the substance of the patent laws.'" *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1328 (Fed. Cir. 2008) (quoting *Akro Corp. v. Luker*, 45 F.3d 1541, 1543 (Fed. Cir. 1995)).

##### a. The Amazon Plaintiffs Bear the Burden of Proving Personal Jurisdiction

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), "the plaintiff bears the burden of proof as to whether the defendant is subject to personal jurisdiction."

---

[14] In *Federal Practice and Procedure*, Wright & Miller describe the purpose of Rule 12(g) as follows:

> Subdivision (g) contemplates the presentation of an omnibus pre-answer motion in which the defendant advances every available Rule 12 defense and objection he may have that is assertable by motion. The defendant cannot delay the filing of a responsive pleading by interposing these defenses and objections in piecemeal fashion, but must present them simultaneously. Any defense that is available at the time of the original motion, but is not included, may not be the basis of a second pre-answer motion.

5C Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1384 (3d ed.)
    In any event, GEMSA submitted its second Rule 12 motion before the Court ruled on the first Rule 12(b) motion, so GEMSA "could have simply moved to consolidate its arguments." *Jetform Corp. v. Unisys Corp.*, 11 F. Supp. 2d 788, 791 (E.D. Va. 1998) (considering second Rule 12 motion because defendant filed it before the court ruled on the first Rule 12 motion).

*Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com. De Equip. Medico*, 563 F.3d 1285, 1294 (Fed. Cir. 2009). Where the parties have not yet conducted discovery and the court does not conduct an evidentiary hearing, "the plaintiff need[s] 'only to make a prima facie showing' that the defendants [are] subject to personal jurisdiction." *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1201 (Fed. Cir. 2003). The Court "must accept the uncontroverted allegations in the plaintiff's complaint as true and resolve any factual conflicts in the affidavits in the plaintiff's favor." *Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003). The burden of proof then "shifts to the defendant, which must 'present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1362 (Fed. Cir. 2006) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–77 (1985)).

### b. Personal Jurisdiction Standard[15]

"'Personal jurisdiction' is the phrase used to express a court's power to bring a person into its adjudicative process." *Noble Sec., Inc. v. MIZ Eng'g, Ltd.*, 611 F. Supp. 2d 513, 525 (E.D. Va. 2009) (citation omitted). "Federal district courts may exercise such personal

---

[15] Because the Amazon Plaintiffs seek to establish personal jurisdiction under the purported long-arm statute of § 293, the Court's personal jurisdiction standard omits reference to Federal Rule of Civil Procedure 4(k), which typically serves as the starting point for a personal jurisdiction analysis.

Rule 4(k)(1)(A) states that service of process establishes jurisdiction over a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(1)(A). Pursuant to Rule 4(k)(1)(A), a federal court addressing personal jurisdiction over a defendant approaches such an inquiry by analyzing the long-arm statute and governing principles of the forum state. *See id.*; *see also CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 292 (4th Cir. 2009) ("[A] federal court assessing such a jurisdictional issue borrows and applies the applicable long-arm statute and governing principles from the forum state.").

Rule 4(k)(2), on the other hand, establishes jurisdiction over a defendant when process has been served and three requirements are met: "(1) the plaintiff's claim arises under federal law, (2) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction, and (3) the exercise of jurisdiction comports with due process." *Synthes*, 563 F.3d at 1294.

jurisdiction 'only to the degree authorized by Congress under its constitutional power to ordain and establish the lower federal courts.'" *Id.* (quoting *ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 622 (4th Cir. 1997)). The personal jurisdiction question is resolved by a two-step inquiry: (i) "the district court determines whether a provision makes the defendant amenable to process"; and, (ii) "the district court ensures that maintenance of the suit does not offend . . . the due process clause." *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1358 (Fed. Cir. 1998) (internal quotations omitted).

The "test for determining whether the exercise of jurisdiction comports with due process" is determined by the following "three-pronged approach" emanating from the Supreme Court's decision in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945). *See Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1411 (Fed. Cir. 2009). "First, the defendant must have 'minimum contacts' with the forum state," which, in the "context of specific jurisdiction," means that "the defendant has 'purposefully directed his activities at residents of the forum.'" *Id.* (quoting *Synthes*, 563 F.3d at 1297). Second, the claim must "'arise[ ] out of or relate[ ] to the defendant's activities with the forum.'" *Id.* And third, the "'assertion of jurisdiction'" must be "'reasonable and fair.'" *Id.*

### 2. GEMSA Purposefully Availed Itself of the Eastern District of Virginia By Owning a Patent Registered With the USPTO

No doubt exists that the Court has personal jurisdiction over GEMSA because GEMSA owns a patent registered with the USPTO. GEMSA sought and has the privileges and protections of patent ownership. GEMSA does not dispute that § 293 allows personal jurisdiction over non-resident defendants, nor should it. The United States Court of Appeals for the Federal Circuit has made clear that "[§] 293 is a special long-arm statute that requires patentees residing outside the United States either to designate an agent residing somewhere

within the United States for service of process *or to submit to jurisdiction in the United States District Court for the [Eastern District of Virginia]*." *Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.*, 297 F.3d 1343, 1353 (Fed. Cir. 2002) (emphasis added).[16] The *Deprenyl* court explained:

> Although § 293 does not directly authorize the exercise of jurisdiction over [GEMSA], the statute represents an important Congressional judgment that in exchange for obtaining the benefits of a United States patent, it is appropriate to require foreign patentees to submit to broader jurisdiction in United States Federal Court than that to which they would otherwise be subject. *Japan Gas Lighter Ass'n v. Ronson Corp.*, 257 F. Supp. 219, 228 (D.N.J. 1966) (Section 293 was "designed to assist a plaintiff by producing an alternative avenue to obtain personal jurisdiction and service where it would otherwise be difficult or impossible.").

*Id.* Accordingly, as a "special long-arm statute," § 293 confers on this Court jurisdiction over GEMSA.

GEMSA, however, argues that this Court's exercise of personal jurisdiction still must comport with due process. Although true, GEMSA's conclusory argument that the exercise of personal jurisdiction here would violate due process borders on frivolous. Federal courts long have held that, in the § 293 context, registering a patent alone satisfies the constitutional inquiry.[17] "By registering a patent in the [USPTO], a party residing abroad purposefully avails

---

[16] The quote in *Deprenyl Animal Health* listed the United States District Court for the District of Columbia—instead of this District—because § 293 previously vested jurisdiction there.

[17] Outside the § 293 context, the Court might find otherwise. In *Touchcom*, a legal malpractice case, the Federal Circuit declined to find that the defendants purposefully availed themselves of Virginia because the alleged contacts were "limited to the filing of a patent application at the USPTO and subsequent communications and filings made in connection with that application." 574 F.3d at 1412. The appellate court explained:

> In this case, appellees' contacts with Virginia are limited to the filing of a patent application at the USPTO and subsequent communications and filings made in connection with that application. Appellees never traveled to Virginia in connection with this patent and thus have not contributed to or benefited from

13

itself of the benefits and protections patent registration in this country affords." *Nat'l Patent Dev. Corp. v. T.J. Smith & Nephew Ltd.*, 877 F.2d 1003, 1009 (D.C. Cir. 1989). "It is therefore fair and reasonable to require such a party to respond here—*i.e.*, in federal court in [this District], where the party has registered its patents—in proceedings, whether arising under federal or state law, concerning the U.S.-registered patent."[18] *Id.* at 1009–10. GEMSA offers no authority to the contrary, and the Court finds *National Patent Development Corp.* applicable here.[19] The Court will deny the Motion to Dismiss.

---

Virginia's restaurants, hotels, airports, or other commercial establishments in its prosecution of the patent. Appellees have not directed any of their activities at issue in this case towards residents of Virginia, nor have they engaged in business negotiations with any Virginia residents. Appellees' contacts are limited to long-distance communications with a federal agency that happens to be located in Virginia primarily because of the state's proximity to our nation's capital. While appellees made such contacts purposefully, and thus those contacts are neither random nor fortuitous, *see id.*, *the contacts do not indicate a purposeful availment of the "privilege of conducting business within" Virginia.* Finally, they have engaged in no conduct in Virginia that concerns the interests of Virginia, such as protecting its citizens, businesses, or property. For purposes of this lawsuit, appellees do not therefore possess the constitutional "minimum contacts" with Virginia, *Hanson* [*v. Denckla*],357 U.S. [235,] 253 [(1958)] are not subject to jurisdiction in Virginia's courts of general jurisdiction, and are therefore not subject to jurisdiction in federal court in Virginia under a Rule 4(k)(1)(A) analysis.

*Id.* (emphasis added). Importantly, however, the Federal Circuit distinguished *Tomcom* from cases affecting a patent. In a footnote following the quoted analysis, the Federal Circuit stated: "This malpractice suit, where the patent owner is the plaintiff, is not a case to which 35 U.S.C. § 293 applies, where jurisdiction over a foreign patentee is provided for proceedings affecting the patent." *Id.*

[18] Like the quote in *Deprenyl Animal Health*, the *National Patent Development Corp.* court referred to the District of D.C., but § 293 has since been amended to vest jurisdiction in the Eastern District of Virginia.

[19] GEMSA also briefly argues that GEMSA "was not the patent applicant and, thus, did not institute the patent application process in [the Eastern District of Virginia]" and that GEMSA is not subject to jurisdiction in the Eastern District of Virginia because it already submitted to jurisdiction of the Eastern District of Texas. (Mem. Supp. 2.) Both arguments fail.

## IV. Analysis: Motion to Withdraw

With the Motion to Quash and the Motion to Dismiss pending, GEMSA's attorneys filed the Motion to Withdraw, requesting that they "be permitted to withdraw as counsel of record for GEMSA . . . and that ECF notifications be terminated in connection with this case." (Mot. Withdraw 1, ECF No. 35.) GEMSA's counsel asserts that "GEMSA has not fulfilled [its] obligations under the engagement with Ramey & Schwaller, LLP and Moran Reeves & Conn PC and due to a breakdown in communication between [the attorneys] and GEMSA as to the purpose and meaning of legal representation." (*Id.* at 2.) GEMSA's attorneys represent that they "have taken reasonable steps to avoid any foreseeable prejudice to the rights of GEMSA." (*Id.*) Finally, GEMSA's attorneys assert that their termination would not prejudice GEMSA and that they will make necessary accommodations to deliver to GEMSA all papers and property to which GEMSA is entitled. For the reasons stated below, the Court will deny the Motion to Withdraw without prejudice.

---

First, regarding GEMSA's argument that it did not institute the patent application process, § 293 does not limit its reach to the party that directly applied for the patent. The statute defines "patentee" to "include[ ] not only the patentee to whom the patent was issued but also *the successors in title to the patentee*." 35 U.S.C. § 100(d). As the assignee of the '400 and '677 patents, GEMSA qualifies as a successor in title and, thus, a patentee. For that same reason, the Court distinguishes *TomTom, Inc. v. AOT Sys. GmbH*, 893 F. Supp. 2d 785 (E.D. Va. 2012), on which GEMSA conceivably relies for the premise that a court cannot exercise jurisdiction over a foreign defendant who is neither a patentee or assignee.

Second, GEMSA provides no authority for its argument that it can avoid personal jurisdiction in the Eastern District of Virginia by agreeing to jurisdiction in a different federal district. To the contrary, § 293 grants non-exclusive personal jurisdiction over foreign patentees in the Eastern District of Virginia. *See Japan Gas Lighter Ass'n*, 257 F. Supp. at 228 (rejecting patentee's argument that the United States District Court for the District of New Jersey could not exercise personal jurisdiction because § 293 vested jurisdiction exclusively in District of D.C.). By that logic, whether the Eastern District of Texas may exercise jurisdiction over GEMSA has no effect on the Eastern District of Virginia's jurisdiction under § 293.

### A. Motion to Withdraw Standard

The Supreme Court "has not decided whether federal courts have inherent authority to require attorneys to continue representation against their will in civil cases." *Towns v. Morris*, 50 F.3d 8, 1995 WL 120687, at *2 (4th Cir. March 22, 1995) (unpublished table decision) (citing *Mallard v. U.S. Dist. Court for S. Dist. of Iowa*, 490 U.S. 296, 310 (1989)). District courts may, however, under local rule, condition withdrawal of representation on leave of court. *Id.* (citation omitted); *see also* 28 U.S.C. § 1654 ("In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein."). The United States Court of Appeals for the Fourth Circuit has explained that "[t]he purpose of such a rule is to ensure the effective administration of justice." *Towns*, 1995 WL 120687, at *2. Thus, a motion to withdraw should be granted when "the attorney's presence is 'not essential to the administration of justice.'" *Id.* (quoting *A Sealed Case*, 890 F.2d 15, 17 (7th Cir. 1989)).

In this District, a local rule pertains. Local Rule 83.1(G) provides that: "[n]o attorney who has entered an appearance in any civil action shall withdraw such appearance, or have it stricken from the record, except on order of the Court and after reasonable notice to the party on whose behalf said attorney has appeared." E.D. Va. Loc. Civ. R. 83.1(G). Also, the Virginia Rules of Professional Conduct require that a counsel of record seek leave of court to withdraw, and that counsel do so "after compliance with notice requirements pursuant to the applicable Rules of Court." Va. R. Prof'l Conduct 1.16(c).

When exercising discretion in evaluating a motion to withdraw, a district court should consider the Virginia Rules of Professional Conduct to determine whether those rules would permit withdrawal. *Diedrich v. City of Newport News*, No. 4:04cv9, 2004 WL 3436073, at *2 (E.D. Va. Nov. 29, 2004). Virginia Rule of Professional Conduct 1.16(b)(4) authorizes a

16

lawyer's withdrawal from representation when "the client fails substantially to fulfill an obligation to the lawyer regarding the lawyer's services and has been given reasonable warning that the lawyer will withdraw unless the obligation is fulfilled." Va. R. Prof'l Conduct 1.16(b)(4).

"[B]efore issuing an order granting withdrawal, 'the Court may consider the disruptive impact the withdrawal would have.'" *Id.* (quoting *Patterson v. Gemini Org., Ltd.*, 238 F.3d 414, 2000 WL 1718542, at *2 (4th Cir. Nov. 17, 2000) (unpublished table decision)). Whether a withdrawal will cause a significant impact depends on the stage of the case at which withdrawal would occur. *Id.* (citing *Whiting v. Lacara*, 187 F.3d 317, 320 (2d Cir. 1999)).

### B. The Court Will Deny the Motion to Withdraw Without Prejudice

GEMSA proffers reasons in its Motion to Withdraw that comport with the standard articulated in Virginia Rule of Professional Conduct 1.16(b)(4). GEMSA's attorneys allege that they have notified GEMSA of their desire to withdraw. GEMSA has stated no objection on the record in this case, and GEMSA's attorneys do not indicate otherwise.

The Amazon Plaintiffs do not oppose the Motion to Withdraw as a violation of the standard articulated above. Instead, they oppose the GEMSA attorneys' request because the Amazon Plaintiffs contend that GEMSA filed the Motion to Quash and the Motion to Dismiss for "'unreasonably and vexatiously'" for the "improper purpose . . . [of] caus[ing] unnecessary delay." (Opp'n Mot. Withdraw 4 (citing 28 U.S.C. § 1927; Fed. R. Civ. P. 11(b)(1)), ECF No. 36.) The Amazon Plaintiffs state an intention to pursue fees and sanctions. The Amazon Plaintiffs express concern that "the Court may divest itself of jurisdiction over former counsel with respect to ordering sanctions for pre-withdrawal misconduct," *id.* at 5, while acknowledging "that a federal court may consider collateral issues after an action is no longer

pending." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990). GEMSA's attorneys do not dispute that a court may sanction attorneys who have withdrawn representation. While the Court has noted that the basis for GEMSA's motions—given black letter law seemingly in conflict with it—is perplexing at best, the Court need not deny the Motion to Withdraw on the basis of potentially losing jurisdiction that seems equally unsupported by law.

Instead, the Court will deny the Motion without prejudice, until substitute counsel makes an appearance. This will avoid undue disruption to the progress of the case.

### C. GEMSA Must Obtain New Counsel Within Thirty Days

For the reasons stated above, the Court will order GEMSA to have new counsel appear in this case no later than thirty (30) days from the date of this Memorandum Opinion and Order. Permitting GEMSA's attorneys to withdraw with no substitute counsel in place could disrupt the progress of this litigation, which has already been unduly delayed due to the numerous motions filed. The Court will therefore deny GEMSA's Motion to Withdraw without prejudice. Once substitute counsel is in place, the Court will entertain a renewed Motion to Withdraw from GEMSA's counsel.

### V. Conclusion

For the foregoing reasons, the Court will: deny the Motion to Quash and the Motion to Dismiss; deny the Motion to Enjoin and the Motion to Strike as moot; and, deny the Motion to Withdraw without prejudice. An appropriate order will accompany this Memorandum Opinion.

/s/ M. Hannah Lauck
United States District Judge

Richmond, Virginia
Date: 9/13/17